UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Stephanie F.,

                Plaintiff,

v.                                      19-cv-108 (JLS)

Commissioner of Social Security,

                Defendant.

---

## DECISION AND ORDER

Plaintiff Stephanie F. brings this action under the Social Security Act, seeking review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. 1. Plaintiff moved for judgment on the pleadings. Dkt. 12. The Commissioner responded and cross-moved for judgment on the pleadings. Dkt. 20. Plaintiff replied. Dkt. 21.

For the reasons below, the Court denies Plaintiff's motion and grants the Commissioner's cross-motion.

## PROCEDURAL HISTORY

On September 11, 2014, Plaintiff applied for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). Dkt. 12-1, at 2. She claimed she had been disabled since July 15, 2013, due to degenerative disc disease of the cervical and lumbar spines, left rotator cuff impingement, fibromyalgia, depression,

and post-traumatic stress disorder. *Id.* at 2, 4. On January 20, 2015, Plaintiff received notice that the Social Security Administration denied her application. *Id.* at 2. She requested a hearing before an administrative law judge ("ALJ"), which occurred on June 14, 2017. *Id.* The ALJ issued a decision on October 30, 2017, finding that Plaintiff was not disabled. *Id.* Plaintiff appealed the ALJ's decision, and the Appeals Council denied the request for review on November 20, 2018. *Id.* Plaintiff then commenced this action.

## LEGAL STANDARDS

### I. District Court Review.

The scope of review of a disability determination involves two levels of inquiry. *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987). First, the Court must "decide whether [the Commissioner] applied the correct legal principles in making the determination." *Id.* The Court's review for legal error ensures "that the claimant has had a full hearing under the . . . regulations and in accordance with the beneficent purposes" of the Social Security Act. *See Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (*quoting Cruz v. Sullivan*, 912 F.2d 8, 11 (2d Cir. 1990)). Second, the Court "decide[s] whether the determination is supported by 'substantial evidence.'" *Johnson*, 817 F.2d at 985 (quoting 42 U.S.C. § 405(g)).

"Substantial evidence" is "more than a mere scintilla" and "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations and citations omitted). The Court does not "determine *de novo* whether [the

2

claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (internal quotations and citations omitted). But "the deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." *Byam v. Barnhart*, 336 F.3d 172, 179 (2d Cir. 2003). Indeed, if "a reasonable basis for doubt whether the ALJ applied correct legal principles" exists, applying the substantial evidence standard to uphold a finding that the claimant was not disabled "creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to correct legal principles." *Johnson*, 817 F.2d at 986.

## II. Disability Determination.

In denying Plaintiff's application, the ALJ evaluated her claim under the Social Security Administration's five-step evaluation process for disability determinations. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a)(2). At the first step, the ALJ determines whether the claimant currently is engaged in substantial gainful employment. *Id.* §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). If so, the claimant is not disabled. *Id.* If not, the ALJ proceeds to step two. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step two, the ALJ decides whether the claimant suffers from any severe impairments. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). If there are no severe impairments, the claimant is not disabled. *Id.* If there are any severe impairments, the ALJ proceeds to step three. *Id.* §§ 404.1520(a)(4), 416.920(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meets or equals an impairment listed in the regulations. *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii). If the claimant's severe impairment or combination of impairments meets or equals an impairment listed in the regulations, the claimant is disabled. *Id.*

But if the ALJ finds that no severe impairment or combination of impairments meets or equals any in the regulations, the ALJ proceeds to calculate the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1520(a)(4)(iv), (d)-(e); 416.920(a)(4)(iv), (d)-(e). The RFC is a holistic assessment of the claimant that addresses the claimant's medical impairments—both severe and non-severe—and evaluates the claimant's ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for her collective impairments. *See id.* §§ 404.1545, 416.945. After determining the claimant's RFC, the ALJ completes step four. *Id.* §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, she is not disabled, and the analysis ends. *Id.* §§ 404.1520(f), 416.920(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* §§ 404.1520(a)(4)(iv), (f); 416.920(a)(4)(iv), (f).

In the fifth and final step, the Commissioner must present evidence showing that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See id.* §§ 404.1520(a)(4)(v), (g); 416.920(a)(4)(v), (g); *see also Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). Specifically, the Commissioner must prove that the claimant "retains a residual

4

functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quoting *Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir. 1986)).

## DISCUSSION

### I.  The ALJ's Decision.

The ALJ reviewed Plaintiff's claims for DIB and SSI pursuant to the five-step analysis described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 15, 2013, the alleged onset date. Tr. 21.[1] At step 2, the ALJ found that Plaintiff had severe impairments, which include degenerative disc disease of the cervical and lumbar spines, left rotator cuff impingement, fibromyalgia, depression, and post-traumatic stress disorder. *Id.* At step 3, the ALJ found that these impairments did not meet or medically equal the severity the impairments listed in the regulations. *Id.* At step 4, the ALJ found that Plaintiff had the RFC to perform "light, unskilled work" with several limitations:

> [T]he claimant would be prohibited from climbing ladders, ropes, or scaffolds; could occasionally climb ramps or stairs, stoop, kneel, crouch, or crawl; would need to avoid concentrated exposure to extreme of cold, to humidity and wetness; and would need to avoid slippery and uneven surfaces, hazardous machinery, unprotected heights, and open flames. The claimant would be limited to simple, routine, and repetitive tasks; working in a low stress job, defined as being free of fast paced production requirements, with no hazardous

---

[1] All references to the administrative transcript (Dkt. 5) are denoted "Tr. ____." Page numbers for documents contained the transcript correspond to the pagination located in the lower right corner of each page.

5

> conditions, and only occasional decision making required, and only occasional changes in work setting. She could have only occasional interaction with co-workers and supervisors, and only occasional direct interaction with the general public.

*Id.* at 23; *see also id.* at 30. Based on this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a certified nurse assistant. *Id.* at 31. At step 5—based on testimony of a vocational expert and Plaintiff's age, education, work experience, and RFC—the ALJ determined that other jobs existed "in significant numbers in the national economy" that Plaintiff could perform. *Id.* at 31-32. These jobs included, for example, a shipping and receiving weigher and a lamination inspector. *Id.* at 32. Accordingly, the ALJ concluded that Plaintiff was not disabled, as defined in the Act, from the alleged onset date through the date of the decision. *Id.*

Plaintiff asks this Court to grant her motion for judgment on the pleadings and remand for further administrative proceedings. *See* Dkt. 12, at 1. She argues that the ALJ's RFC determination is not supported by substantial evidence because the ALJ relied on his own lay opinion and improperly weighed the medical opinion evidence. *See* Dkt. 12-1, at 20. Plaintiff also argues that the ALJ mischaracterized her daily activities, relied on stale opinion evidence, and failed to re-contact several treating providers. *Id.* The Commissioner argues that the ALJ properly reviewed the evidence as a whole and formulated the RFC by relying on objective medical evidence, examination evidence, medical opinion evidence, Plaintiff's treatment and response to treatment, and Plaintiff's testimony regarding her daily activities. *See* Dkt. 20-1, at 20-21. The Commissioner also argues that the ALJ properly assessed

6

the consistency of the record in assigning the medical opinions varying weights. *See id.* at 20.

## II. Substantial evidence supports the ALJ's RFC assessment.

Plaintiff asks the Court to vacate the ALJ's decision because the ALJ viewed the evidence as a whole differently than she does. But the ALJ properly based his RFC assessment on relevant evidence that reasonably could be accepted as adequate. As such, the Court will affirm the Commissioner's decision.

### A. The ALJ properly discharged his duty to develop the record.

The ALJ affirmatively developed the record here. The record does not support Plaintiff's assertion that Dr. Kleinerman based his opinion on an incomplete record, and the ALJ had no duty to re-contact Dr. Tetro and Dr. Fishkin or Cardamone Chiropractic.

Whether the record developed by an ALJ is complete is a necessary threshold question. *See* 20 C.F.R. § 702.338 ("The administrative law judge shall inquire fully into the matters at issue . . . ."). An ALJ must re-contact a treating physician if findings within the physician's report appear to be "insufficiently explained, lacking in support, or inconsistent with the physician's other reports." *Bald v. Berryhill*, No. 17-CB-01023-MJR, 2019 WL 1010448, at *4 (W.D.N.Y. Mar. 4, 2019) (citing *Calzada v. Asture*, 753 F. Supp. 2d 250, 269 (S.D.N.Y. 2010)). An ALJ has no duty to re-contact a physician, however, if the "medical evidence is [merely] conflicting or

7

internally inconsistent." *Allen v. Comm'r of Soc. Sec.*, 351 F. Supp. 3d 327, 337 n.2 (W.D.N.Y. 2018).

Here, there are no clear gaps in the record. At Plaintiff's request, the ALJ left open the record, so it would include outstanding documents from Pinnacle Orthopedic. *See* Tr. 29, 79. Plaintiff claims that Dr. Kleinerman did not have a complete file when conducting his review, but does not specify what, if anything, made the file incomplete. *See* Dkt. 12-1, at 30. Assuming Plaintiff bases this argument on the documents from Pinnacle Orthopedic, her argument fails because those documents have no bearing on Dr. Kleinerman's opinion on Plaintiff's *mental health* treatment records. *See* Tr. 30.

Nor was the ALJ required to re-contact Dr. Tetro and Dr. Fishkin or Cardamone Chiropractic. First, the ALJ did not disregard Dr. Tetro and Dr. Fishkin's opinion on whether Plaintiff was disabled due to lack of information, as Plaintiff suggests; rather, Dr. Tetro and Dr. Fishkin's opinion that Plaintiff was disabled was never entitled any weight. *See id.*; *see also infra* Section II.B.ii. Second, chiropractors are not treating physicians under the relevant regulations, so the ALJ had no duty to re-contact Cardamone Chiropractic. *See Diaz v. Shalala*, 59 F.3d 307, 312-13 (2d Cir. 1995) (concluding that a chiropractor's opinion is not a "medical opinion" because the relevant regulations do not classify chiropractors as physicians or "other acceptable medical sources"); *see also* 20 C.F.R. § 404.1527(a)(2) (defining "treating source" as an "acceptable medical source who provides . . . or has provided . . . medical treatment or evaluation and who has, or has had, an ongoing

8

treatment relationship with [a patient]"); 20 C.F.R. § 404.1502(a) (defining "acceptable medical source" to include, among others, "[l]icensed physician[s] (medical or osteopathic doctor[s])" but not chiropractors).

Thus, the ALJ properly developed a complete record.

### B. The ALJ properly assessed the evidence.

After reviewing the record, the Court concludes that the ALJ properly assessed Plaintiff's subjective symptom evidence and the medical opinion evidence because he explained his reasons for assigning weight to Plaintiff's testimony and each medical opinion.

#### i. Plaintiff's Testimony.

An ALJ must assess consistency of the evidence across the entire record and has the duty to resolve any conflicts in the evidence. *Richardson*, 402 U.S. at 399; *Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may not perfectly correspond with any of the opinions of medical sources cited in his decision, he was entitled to weigh all of the evidence available to make an RFC finding that was consistent with the record as a whole."); *see also* 20 C.F.R. § 416.927(c)(4) ("Generally, the more consistent a medical opinion is with the record as a whole, the more weight [an ALJ] will give to that medical opinion."). To determine the credibility of subjective symptom evidence, the ALJ follows a two-step process in which he or she: (1) considers whether the medical evidence shows any impairment that "could reasonably be expected to produce the pain or other symptoms alleged"; and (2) upon finding an impairment, evaluates "'the intensity,

9

persistence, or functionally limiting effects' of a claimant's symptoms to determine the extent to which they limit the claimant's capacity to work." *See Wells v. Colvin*, 87 F. Supp. 3d 421, 431 (W.D.N.Y. 2015) (citing 20 C.F.R. §§ 404.1529(a), (b)).

Here, the ALJ noted an inconsistency between Plaintiff's testimony of the "intensity, persistence, and limiting effects of [her] symptoms" and the other record evidence. Tr. 24. To resolve this inconsistency, the ALJ concluded that he would incorporate Plaintiff's testimony into the RFC assessment "only to the extent [it] [could] reasonably be accepted as consistent with the objective medical and other evidence." *See id.* This conclusion is proper because the ALJ "is not required to accept the claimant's subjective complaints without question" and reserves the discretion to weigh the credibility of a claimant's testimony against the other record evidence. *See Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 556 (2d. Cir. 2020) (citing *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010)). The ALJ did not mischaracterize Plaintiff's daily activities because his determination that Plaintiff testified to "mostly normal daily functioning" goes to the qualitative effect of Plaintiff's symptoms. *See id.* at 23-24; Dkt. 12-1, at 23.

### ii. Medical Opinion Evidence on Physical Impairments.

The ALJ appropriately assigned Dr. Liu's opinion "some weight" and linked Plaintiff's back injury history to his conclusion that she is limited to light work. Tr. 29. He properly discharged his duty to assess the consistency of evidence in the entire record—including Plaintiff's testimony—by determining that no further limitations existed. *Id.* The ALJ's RFC assessment reflects Dr. Liu's opinion that

10

Plaintiff had "mild to moderate limitation[s] for prolonged walking, bending, and kneeling." *See id.* at 23, 29 ("[T]he claimant . . . could occasionally . . . stoop, kneel, crouch, or crawl[.]"). Thus, the ALJ did not mischaracterize Plaintiff's daily functioning when weighing Dr. Liu's opinion.

Contrary to Plaintiff's claim, Dr. Liu's opinion is not stale. An opinion is not stale simply because it is dated. *Whitehurst v. Berryhill*, No. 1:16-CV-01005-MAT, 2018 WL 3868721, at *4 (W.D.N.Y. Aug. 14, 2018) (finding that a claimant's condition had not deteriorated because a later medical opinion stated that the claimant "looked well and . . . was clinically stable"); *cf. Hawkins v. Colvin*, No. 15-CV-6394 CJS, 2016 WL 6246424, at *3 (W.D.N.Y. Oct. 26, 2016) (finding that a claimant's condition had deteriorated based on later onset of degenerative disc disease of the spine, on which no doctor opined).

The ALJ's summary of the treatment notes and follow-ups from after Plaintiff's motor vehicle accident and cervical spine surgery reflect a finding that Plaintiff's cervical spine range of motion, and left shoulder and arm range of motion and pain, improved with mild treatment and conservative care—including physical therapy, medication management, and advice to avoid aggravating activities. Tr. 27-30. Shoulder surgery was discussed "in very limited detail" as a possibility, but the need for surgery never arose. *See id.* at 1241 (Ex. 13-F, at 5). And the ALJ specifically mentioned the note that Plaintiff was "recovering well" after the cervical spine surgery. *Id.* at 28. The fact that Dr. Liu examined Plaintiff before the motor vehicle accident does not render Dr. Liu's opinion stale because Plaintiff points to

11

no evidence that her condition meaningfully deteriorated after the accident or cervical spine surgery.

Moreover, the ALJ addressed medical records from after the motor vehicle accident and cervical spine surgery; he assessed Dr. Tetro and Dr. Fishkin's opinions.[2] *See id.* at 30. In particular, the ALJ assessed evaluations on March 17, 2015 and March 21, 2017, and assigned Dr. Tetro's and Dr. Fishkin's respective opinions "little weight." *Id.* He properly set aside Dr. Tetro and Dr. Fishkin's findings of disability. *See id.*; 20 C.F.R. § 404.1527(d)(1) ("[An ALJ is] responsible for making the determination or decision about whether [a claimant] meet[s] the statutory definition of disability. . . . A statement by a medical source that [a claimant is] 'disabled' or 'unable to work' does not mean that [the Commissioner] will determine that [the claimant is] disabled.").

The ALJ further reasoned that the effects of Plaintiff's shoulder pain were limited, given Plaintiff's overall history of mostly mild treatment for her shoulder and mostly normal daily functioning. *See id.* at 27-30; *see also Yucekus*, 829 F. App'x at 556 (concluding that the ALJ properly determined the claimant's shoulder pain was not severe enough to preclude an RFC determination based on claimant's

---

[2] Plaintiff asserts that the ALJ erroneously attributed various opinions by Dr. Tetro and Dr. Fishkin to Dr. Tetro. *See* Dkt. 12-1, at 32. The ALJ did erroneously attribute Plaintiff's treatment on March 21, 2017 to Dr. Tetro, but this error is harmless because Plaintiff does not allege—and the record does not show—that in doing so the ALJ failed to properly assess these opinions. *See Green v. Apfel*, 25 F. App'x 54, 56 (2001) (affirming district court's decision to uphold the Commissioner's determination, which was supported by substantial evidence); Dkt. 12-1, at 13, 32; Tr. 30.

testimony that sporadic use of medication improved the pain, and that he could dress himself and shop for groceries); *cf. Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) ("Nor is the opinion of the treating physician to be discounted merely because he has recommended a conservative treatment regimen.").

The ALJ also properly assigned the disability index forms "little weight." *See* Tr. 30. In so doing, he recognized that he should consider Plaintiff's subjective descriptions of her pain and its limiting effects, but that Plaintiff's perception was not guaranteed controlling weight. *See id.*; *Genier*, 606 F.3d at 49-50.

And the ALJ properly set aside handwritten notes at the bottom of the forms because: (1) disability determinations are reserved to the Commissioner; and (2) chiropractors are not "acceptable medical source[s]" under 20 C.F.R. § 404.1502(a)(1) and 20 C.F.R. § 416.902(a)(1), so opinions that arise from such sources—even if examining sources—are not entitled to controlling weight. *See Diaz*, 59 F.3d at 313 ("[T]he ALJ has the discretion to determine the appropriate weight to accord the chiropractor's opinion based on all the evidence before him; under no circumstances can the regulations be read *to require* the ALJ to give controlling weight to a chiropractor's opinion." (emphasis in original)); 20 C.F.R. § 416.927(f)(1) (listing supportability and consistency with the record as a whole as factors bearing on the weight of medical opinions). Even though Dr. Tetro's and Dr. Fishkin's opinions were not entitled to controlling weight, the ALJ could consider them to the extent they "reflect[ed] . . . judgment about some of the same issues

addressed in medical opinions from acceptable medical sources." *See* 20 C.F.R. § 404.1527(f)(1).

Accordingly, the ALJ was justified in assigning "little weight" to the disability index forms. *See* Tr. 30.

### iii. Medical Opinion Evidence on Mental Impairments.

The ALJ also assigned proper weight to the opinions regarding mental impairments. In particular, he appropriately assigned Dr. Luna's opinion "little weight" based on Plaintiff's inconsistent compliance with mental health treatment, which impacted her functioning. *See id.* And he permissibly assigned Dr. Kleinerman's opinion "some weight" because it was consistent with Plaintiff's testimony about her daily functioning and improvement with medication. *See id.*

Under the treating physician rule,[3] a treating physician's opinion receives controlling weight if it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." 20 C.F.R. § 416.927(c)(2); *see Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019); *Smith v. Berryhill*, 740 F. App'x 721, 724 (2d Cir. 2018) (stating that an ALJ "may set aside the opinion of a treating physician that is contradicted by the weight of other record evidence").

If a treating opinion is not entitled to controlling weight, then the ALJ must determine how much weight, if any, to give the opinion by "explicitly consider[ing]"

---

[3] The ALJ was required to apply the treating physician rule because Plaintiff's claim was filed before March 27, 2017. *See* 20 C.F.R. § 416.927.

14

the following nonexclusive factors: (1) the frequency, length, nature, and extent of treatment; (2) the nature and frequency of examination; (3) the amount of medical evidence supporting the opinion; (4) the consistency of the opinion with the remaining medical evidence; (5) whether the physician is a specialist; and (6) whatever other factors tend to support or contradict the opinion. *See* 20 C.F.R. §§ 404.1527(c)(1)-(c)(6); *Burgess*, 537 F.3d at 129. In considering these factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (citing *Halloran v. Barnhart*, 362 F.3d 28, 33 (2d Cir. 2004)).

The ALJ properly applied the treating physician rule when assigning Dr. Luna's opinion "little weight" and Dr. Kleinerman's opinion "some weight." He explicitly referenced Plaintiff's "[l]ack of compliance with mental health treatment, or intermittent compliance," which undermines Dr. Luna's opinion that Plaintiff's mental impairments "may 'significantly interfere' with [her] ability to function on a daily basis." *See* Tr. 30. The ALJ recognized and considered that "[Plaintiff] has difficulty keeping appointments due to pain," but also properly noted that Plaintiff sought "mental health [treatment] on and off for three years," was discharged several times from treatment due to inconsistent attendance, and ran out of medication on several instances "due to needing to schedule an appointment with her doctor." *See id.* at 24. Plaintiff's inconsistent compliance with mental health treatment is a "good reason" for the weight assigned to Dr. Luna's opinion because it tends to contradict the opinion. *See* 20 C.F.R. § 404.1527(c)(2) ("[An ALJ] will

15

always give good reasons in [his] notice of determination or decision for the weight [he] give[s Plaintiff's] treating source's medical opinion."). The ALJ cited Dr. Luna's finding that Plaintiff had "good adaptive functioning skills in all areas" as an internal inconsistency in Dr. Luna's opinion, which further qualifies that opinion. *See* Tr. 30. The reasons that tend to qualify Dr. Luna's opinion also supported Dr. Kleinerman's opinion that, notwithstanding Plaintiff's mental impairments, her daily functioning suffers from only mild restrictions and moderate difficulties. *See id.*

In sum, when weighing Plaintiff's testimony, medical opinion evidence, and treatment and response to treatment, the ALJ evaluated the "intensity, persistence or functionally limiting effects of pain or other symptoms . . . not substantiated by objective medical evidence . . . to determine if [Plaintiff's] symptoms limited [her] ability to do work-related activities." *See id.* at 23. His assessment of the evidence accords with the relevant regulations. The Court therefore concludes that the consequent RFC determination was based on substantial evidence.

### C. The ALJ did not rely on his own lay opinion.

The ALJ expressly based his RFC assessment on medical opinion evidence, Plaintiff's treatment and response to treatment, and Plaintiff's testimony regarding her daily activities. *Id.* at 30. He did not substitute his own judgment, and he clearly relied on medical opinion evidence—specifically, opinions of Dr. Liu and Dr. Luna—when making his RFC assessment. *See id.*

16

An ALJ must provide a rationale for an RFC assessment by "simply explain[ing] the link between his RFC assessment and the record evidence supporting that assessment." *Paul v. Colvin*, No. 15-CV-310-RJA-HBS, 2016 WL 6275231, at *2 (W.D.N.Y. Oct. 27, 2016); *see Cichocki v. Astrue*, 729 F.3d 172, 177 (2d Cir. 2013) (holding that an ALJ need not conduct a "explicit function-by-function analysis"). The ALJ must not rely on "raw medical evidence." *Goble v. Colvin*, No. 15-CV-6302 CJS, 2016 WL 3179901, at *6 (W.D.N.Y. June 8, 2016). In other words, an RFC assessment generally must be supported by "competent medical opinion." *Id.*

The ALJ linked his conclusion that Plaintiff is limited to light work to the consultative examinations on the record: (1) Dr. Liu's opinion that Plaintiff has "mild to moderate limitation for prolonged walking, bending, and kneeling"; and (2) Dr. Luna's opinion that Plaintiff "has mildly limited ability to maintain attention and concentration and make appropriate decisions[,] and has moderately limited ability to relate adequately with others and appropriately deal with stress," which Dr. Kleinerman corroborated. Tr. 29, 30. And the ALJ's determination that Plaintiff should be "prohibited from climbing ladders, ropes, or scaffolds" accounts for limitations related to Plaintiff's left shoulder as examined by Dr. Tetro and Dr. Fishkin. *See id.* at 23, 30. Notably, Plaintiff testified minimally on any specific left shoulder pain and testified that she could lift around fifteen pounds. *See id.* at 57 (omitting her left shoulder as a part of her body that "give[s her] the most pain"), 60. Thus, the physical, environmental, and social limitations determined by the

17

Case 1:19-cv-00108-JLS   Document 23   Filed 03/29/21   Page 18 of 18

ALJ correspond to the evidence on the record and do not result from the ALJ's lay opinion. *See id.* at 23.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Plaintiff's motion for judgment on the pleadings (Dkt. 12) and **GRANTS** the Commissioner's cross-motion for judgment on the pleadings (Dkt. 20). The Court **AFFIRMS** the Commissioner's decision.

SO ORDERED.

Dated:     March 29, 2021
           Buffalo, New York

_____
JOHN L. SINATRA, JR.
UNITED STATES DISTRICT JUDGE